UNITED STATES OF AMERICA

Before the

SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 105783 / June 26, 2026

WHISTLEBLOWER AWARD PROCEEDING
File No. 2026-28

---

In the Matter of the Claims for Award

in connection with

Redacted

Redacted

Notice of Covered Action Redacted

---

## ORDER DETERMINING WHISTLEBLOWER AWARD CLAIMS

The SEC's Office of the Whistleblower ("OWB") issued Preliminary Summary Dispositions ("PSDs") recommending the denial of the whistleblower award claims submitted by Redacted ("Claimant 1"), Redacted ("Claimant 2") and Redacted ("Claimant 3") in connection with the above-referenced covered action (the "Covered Action") (Claimants 1, 2 and 3 are also referred to collectively as "Claimants"). Claimants filed timely responses contesting their respective preliminary denials.[1] For the reasons discussed below, OWB's recommendations are adopted and Claimants' award claims are denied.

## I. Background

### A. The Covered Action

The Commission brought enforcement actions involving the use of Redacted Redacted, including the above-referenced Covered Action. The Commission found that the Covered Action respondent had violated Redacted Redacted Redacted Redacted Redacted. The Commission further found that the respondent Redacted Redacted, in violation of the federal securities laws, and to

[1] The PSD also recommended the denial of the award application of one other claimant, who did not contest the PSD. As a result, the PSD with respect to this claimant became the Final Order of the Commission through operation of Exchange Act Rule 21F-18(b)(4), 17 C.F.R. § 240.21F-18(b)(4).

Redacted

Among other relief, the Commission ordered that the respondent pay Redacted .
Redacted . The Office of the Whistleblower ("OWB") posted a Notice for the Covered Action on the Commission's public website inviting claimants to submit whistleblower award applications within 90 days. Claimants filed timely whistleblower award claims.

### B. The Preliminary Summary Dispositions

OWB issued Preliminary Summary Dispositions recommending that the Claimants' award claims be denied because their information did not lead to the success of the Covered Action. OWB determined that the Commission investigation that resulted in the bringing of the Covered Action (the "Sweep Investigation") was not opened based on information provided by any of the Claimants. Further, none of the Claimants' information was received or used by the staff handling the Covered Action,[2] and those staff members otherwise had no contact with Claimants relating to the allegations in the Covered Action or the information uncovered in the Sweep Investigation.

### C. Claimants' Responses to the Preliminary Summary Dispositions

Claimants submitted timely written responses contesting their Preliminary Summary Dispositions.

1. Claimant 1

Claimant 1 states that the PSD erred in purportedly finding that the Commission did not: (1) receive his/her information; and (2) use Claimant 1's information to open up the Sweep Investigation.[3] Claimant 1 asserts that his/her tip on Redacted in the Covered Action "basically triggered" Commission staff " Redacted
Redacted

Redacted

Claimant 1 further asserts that the Commission has repeatedly "lied" to Claimant 1 and presented him/her with "false documents," including "fishy" redacted staff declarations, to prevent him/her from receiving an award. As a result of the Commission's "dishonesty and fraudulent practices," Claimant 1 argues that he/she should receive a maximum 30% award for his/her contributions to the Sweep Investigation and the success of the Covered Action. Claimant further contends that

---

[2] The Sweep Investigation consisted of an investigation into Redacted
Redacted .

[3] Claimant 1 also contends that his/her information may have contributed to other successful enforcement actions brought by the Commission involving Redacted
Redacted . We note that Claimant 1's contention regarding misconduct involving Redacted is not the subject matter of the Covered Action but, in any event, we do not address this contention since the only matter under consideration here is the Covered Action.

the Commission is "biased" in favor of itself and its employees "for their monetary benefit."[4] Anything based on the Commission's dishonesty and fraudulent practices, Claimant 1 argues, "should not be considered but should be void, simply because no one should include any illegal activities from anything as a reference, which will negatively impact the claim of [Claimant 1's] legit awards." According to Claimant 1, the Commission opened up its investigation and sent the Covered Action respondent a subpoena after Claimant 1 submitted his/her tip. Claimant 1 concludes that if/when his/her case is appealed to the courts, he/she will "claim billions of dollars" and other expenses for the Commission's "unethical practice," and will "request to remove and disbar all unethical employees related to this file."

Claimant 1 also raises objections to the confidential materials he/she received from OWB in response to Claimant 1's request for the record materials. Specifically, Claimant 1 requests authorization from the Commission to share these materials with the President of the United States, the United States Congress and federal or state court, as well as the news media, in order to document "the Commission's involvement in the fraudulent practices."[5] Claimant 1 further requests "full disclosure" about the other award claimants and information about when the investigation of the respondent was opened.

2. Claimant 2

Claimant 2 asserts in his/her reconsideration request that Redacted Redacted Redacted Redacted Redacted Claimant 2 states that the Redacted Redacted Claimant 2 maintains that he/she "should not suffer losses because of [respondent's] intentional concealment or targeting."

3. Claimant 3

Claimant 3 argues in his/her reconsideration request that Claimant 3's contributions to an earlier Commission enforcement action against Redacted (the "Other Entity") for similar Redacted violations were a "pivotal catalyst" and "foundation" for the Commission's opening of the Sweep Investigation. Claimant 3 asserts that his/her internal whistleblowing at the Other Entity led the Other Entity to self-report these violations to the Commission which, in turn, led the Commission to open an investigation into the Other Entity (the "Other Entity Investigation") and, ultimately, with the assistance of Claimant 3's later detailed tip and other information, including sworn testimony, led to the success of the

[4] Claimant 1 maintains that "our government employees are not honest, especially those who get bonuses and commissions through different channels [and that] [i]t's not a need, but greed, and they have ways to achieve their monetary goals." Regarding the Commission, Claimant 1 alleges that the "[p]urpose is simple, Commission will keep the money for its benefit."

[5] Claimant 1 states that this disclosure is necessary to expose the "suffering" and "pain" Americans are struggling with "because most of the employees from our US government offices are from the same racial and religious groups" and "are not honest but selfish."

Commission's enforcement action against the Other Entity (the "Other Entity Action").[6] Claimant 3 notes that one of the staff declarations in the record specifically stated the Sweep Investigation was opened when staff assigned to a *** investigation discovered, in response to an investigative subpoena to the Other Entity, the existence of Redacted Redacted Redacted Redacted . Claimant 3 argues that this discovery, along with, to a lesser extent, information the staff learned from news coverage and conversations with other SEC attorneys, showed that the Other Entity Redacted . Claimant 3 maintains, however, that this declaration failed to disclose the key impact Claimant 3's contributions to the Other Entity Investigation had on the decision to open the Sweep Investigation, noting that while the declarant proposed the opening of the Sweep Investigation, the declarant was not the person who actually authorized the opening of the investigation. Claimant 3 asserts that the record needs to include a sworn declaration from the person(s) who did authorize the opening of the Sweep Investigation and that this declaration would show the staff's awareness of the critical importance of the Other Entity's self-report and the information Claimant 3 subsequently provided to the Other Entity Investigation in the decision to open the Sweep Investigation. Claimant 3 further asserts that the staff declaration of an SEC supervisor who consulted on the opening of the Sweep Investigation admits that the Other Entity Investigation informed the Sweep Investigation, Redacted Redacted .

Claimant 3 also argues that the reason the Other Entity Redacted Redacted in response to the Commission's subpoena in Redacted that led to the bringing of the Other Entity Action was because the Other Entity had enhanced its compliance procedures as a direct result of Claimant 3 having reported his/her allegations to the Other Entity.

Claimant 3 further argues that, even if the Sweep Investigation staff did not receive his/her information, Claimant 3's information should, nevertheless, be credited as having satisfied the "led to" requirements of Rule 21F-4(c)(3),[7] which credit a whistleblower who reports original information through an entity's internal compliance procedures with the information the entity then provides the Commission based on the whistleblower's information and/or the results of the entity's investigation initiated in response to the whistleblower's information.[8] Claimant 3 asserts that the information the Commission received from the Other

---

[6] The Commission issued a final order awarding Claimant 3 a *** percent (***%) whistleblower award for his/her substantial assistance in the Other Entity Action.

[7] Exchange Act Rule 21F-4(c)(3), 17 C.F.R. § 240.21F-4(c)(3).

[8] Claimant 3 disputes the Preliminary Summary Disposition's determination that he/she did not qualify under this provision because Claimant 3 provided the information to the Commission more than 120 days after providing it to the Other Entity. Claimant 3 asserts that he/she did provide the Commission with information within 120 days after providing it to the Other Entity. Claimant 3 requests that, if he/she were deemed to have not provided information to the Commission within 120 days of providing it to the Other Entity, the Commission waive the 120-day requirement because of extraordinary circumstances, namely that Redacted Redacted .

Entity's self-report should be credited to Claimant 3 under the provisions of Rule 21F-4(c)(3) and, given the purported importance of the self-report to the decision to open the Sweep Investigation, Claimant 3 should be deemed to have provided information that led to the success of the Covered Action.

Claimant 3 additionally contends that he/she is entitled to an award for the Covered Action since the Other Entity Action, for which Claimant 3 received a whistleblower award (the "Other Entity Action Award"), shares "the same nucleus of operative facts" with the Covered Action and thus, pursuant to Exchange Act Rule 21F-4(d)(1), 17 C.F.R. § 240.21F-4(d)(1), is deemed to be the same action for purposes of determining whistleblower award eligibility for the Covered Action. Claimant 3 argues that the Other Entity Action and the Covered Action "constitute one and the same action" and that Claimant 3, therefore, is eligible to receive a whistleblower award for the Covered Action based on his/her contributions to the Other Entity Action.

Claimant 3 also contends that the Redacted ordered in the Other Entity Action was based on Claimant's whistleblowing, that Claimant's information established the full dimension and context of the misconduct, and that the Commission used the Other Entity Action as a "playbook" or template for, and his/her information contributed to the process, findings Redacted in, the investigations and enforcement actions that followed the Other Entity Action.

Claimant 3 next asserts that the Commission's press release announcing the Other Entity Action specifically notes that Redacted Redacted, including the company that is the subject of the Covered Action, and since Claimant 3 provided important information that helped the Commission to bring the Other Entity Action (for which the Commission awarded him/her the Other Entity Action Award), Claimant 3 should also receive credit for the investigation that resulted in the bringing of the Covered Action.

Claimant 3 also points to the fact that one of the supervisors of an investigation that resulted in the bringing of the Other Entity Action, and who attended Claimant 3's sworn testimony in that investigation, is also listed as a supervisor in the press release that announced the Commission enforcement actions brought against Redacted, including the Covered Action. Claimant 3 contends that this supervisor must have transmitted to the staff that opened the Sweep Investigation the issues Claimant 3 raised in his/her testimony and helped approve, shape, and assist with the decision to open the Sweep Investigation.

Next, Claimant 3 argues that he/she should receive an award because Claimant 3's information caused the news coverage about the Redacted Redacted, which contributed to the staff's decision to open the Sweep Investigation.

Finally, Claimant 3 argues that the materials he/she received in response to Claimant 3's request for the record materials are insufficient and should be supplemented with additional materials.[9]

## II. Analysis

To qualify for an award under Section 21F of the Exchange Act, a whistleblower must voluntarily provide the Commission with original information that leads to the successful enforcement of a covered action.[10] Original information will be deemed to lead to a successful enforcement action if either: (i) the original information caused the staff to "commence an examination, open an investigation . . . or to inquire concerning different conduct as part of a current examination or investigation" and the Commission brought a successful action based in whole or in part on conduct that was the subject of the original information;[11] or (ii) the conduct was already under examination or investigation, and the original information "significantly contributed to the success of the action."[12] For example, the Commission will consider a claimant's information to have significantly contributed to the success of an enforcement action if it allowed the Commission to bring the action in significantly less time or with significantly fewer resources, or to bring additional successful claims or successful claims against additional individuals or entities.[13]

As an initial matter, we note that the record includes several sworn declarations from the Enforcement staff, which we credit,[14] including: (1) declarations prepared by the staff attorney who proposed the opening of, and worked on, the Sweep Investigation (the "Declarant"); (2) a declaration from a second attorney who worked on the Sweep Investigation and specifically on the bringing of the Covered Action (the "Covered Action Attorney"); (3) a declaration from a

[9] Among the materials that Claimant 3 requests be made a part of the record are: (1) the identity of all SEC personnel who viewed or received copies of Claimant 3's tip; (2) all internal and external communications from SEC personnel who implemented and approved the Sweep Investigation, including the SEC's Chairman, the Director of the Division of Enforcement and other senior Commission officials; (3) the identity of the Commission personnel who negotiated and approved settlement amounts and non-economic settlement obligations with the Other Entity Redacted charged in the Covered Action; (4) whether Redacted were based on the Other Entity Action, and whether these personnel were familiar with Claimant 3's information; (5) SEC records of quarterly case review meetings, other staff meetings or communications, investigative plans and Hub System reports that reference Claimant 3's information; and (6) whether any SEC commissioner reviewed the Covered Action preliminary determination in advance of it being issued.

[10] Exchange Act Section 21F(b)(1), 15 U.S.C. § 78u-6(b)(1).

[11] Exchange Act Rule 21F-4(c)(1), 17 C.F.R. § 240.21F-4(c)(1).

[12] Exchange Act Rule 21F-4(c)(2), 17 C.F.R. § 240.21F-4(c)(2).

[13] Exchange Act Rel. No. 85412 at 8-9.

[14] The whistleblower rules contemplate that the record upon which an award determination is made shall consist of, as relevant here, sworn declaration(s) provided by the relevant Commission staff, in addition to the publicly available materials related to the Covered Action, the claimant's tip, the claimant's award application, and any other materials timely submitted by the claimant in response to the Preliminary Summary Disposition. *See* Exchange Act Rule 21F-12(a), 17 C.F.R. § 240.21F-12(a).

senior Enforcement attorney who reviewed the Declarant's proposal and was consulted on the decision to open the Sweep Investigation ("Supervisor 1"); and (4) declarations from a senior Enforcement Attorney who supervised the Other Entity Investigation, as well as several of the enforcement actions resulting from the Sweep Investigation, including the Covered Action itself ("Supervisor 2"). Based on our review of the record, including the multiple declarations, we find that none of the Claimants provided information that led to the success of the Covered Action.

### A. Claimants 1 and 2's Contentions

The record is clear that neither Claimant 1's nor Claimant 2's information led to the successful enforcement by the Commission of the Covered Action. As the tips cited by Claimant 1 and 2 in their whistleblower award applications as causing the opening of the Sweep Investigation and contributing to the success of the Covered Action were not submitted to the Commission until after the opening of the Sweep Investigation, they could not have caused the staff to open the investigation. Further, as the Covered Action Attorney attested in a sworn declaration, the staff did not recall receiving information from, or communicating with, either Claimant 1 or 2 before or during the part of the Sweep Investigation that led to the bringing of the Covered Action. In addition, this staff declaration states that no information from either Claimant 1 or 2 was used in the Covered Action. Finally, as the Covered Action Attorney observed in his/her declaration, the subject matter of Claimants 1 and 2's submissions to the Commission -- in Claimant 1's case, allegations concerning Redacted Redacted Redacted , and in Claimant 2's case, that Redacted Redacted Redacted – are unrelated to the subject matter of the Sweep Investigation and the Covered Action itself.

### B. Claimant 3's Contentions

Claimant 3 suggests that because his/her information concerned the same sort of misconduct that was found to have occurred in the Covered Action, his/her information must have been used by the responsible Enforcement staff that investigated and worked on the Covered Action. However, the standard for award eligibility is not what the staff would have or could have done in hypothetical circumstances, but, rather, what impact a claimant's information actually has on the investigation.[15] That Claimant 3's information bears a factual nexus to the findings in the Covered Action, and that Claimant 3's information was important to the success of the Other Entity Action, does not mean that his/her information "led to" the success of the Covered Action. Rather, as noted, the record, including multiple sworn staff declarations, supports the conclusion that Claimant 3 did not provide information to the Commission that caused the opening of the Sweep Investigation or significantly contributed to the Sweep Investigation or the success of the Covered Action.

---

[15] Order Determining Whistleblower Award Claims, Rel. No. 99670 (March 5, 2024); Order Determining Whistleblower Award Claim, Release No. 34-98655 (Sept. 29, 2023); Order Determining Whistleblower Award Claim, Rel. No. 34-97408 (May 1, 2023); Order Determining Whistleblower Award Claim, Rel. No. 34-96657 (Jan. 13, 2023).

Contrary to Claimant 3's supposition, the Other Entity Action resulted from *** separate Commission investigations, including the Other Entity Investigation to which he/she had submitted his/her information and provided testimony. The several declarations establish that it was the staff from a different investigation, and not from the Other Entity Investigation, that recommended the opening of the Sweep Investigation. While Supervisor 2, who supervised the Other Entity Investigation, as well as portions of the Sweep Investigation and several of the enforcement actions resulting from the Sweep Investigation, including the Covered Action, reviewed Claimant 3's information and attended Claimant 3's sworn testimony in connection with the Other Entity Investigation, this supervisor provided a sworn declaration which we credit attesting that to the best of Supervisor 2's recollection, Claimant 3 did not provide information to the Other Entity Investigation staff Redacted Redacted . Nor, as noted, did the staff that opened the Sweep Investigation receive Claimant 3's information from any other source. Finally, as noted, in a sworn declaration, the Covered Action Attorney also attested that he/she did not receive Claimant 3's information.

Claimant 3 asserts that the staff declarations were deficient because they did not include a declaration from the supervisor(s) who approved the opening of the Sweep Investigation, which, Claimant 3 argues, would have shown that the decision to open the Sweep Investigation[16] was "shaped by [the Declarant's] supervisors' knowledge of [Claimant 3's] information" and "inevitably influenced by awareness of [Claimant 3's] information." However, as noted, OWB obtained a sworn declaration from both Supervisor 1 and from Supervisor 2 who supervised the Other Entity Investigation, to address Claimant 3's assertions. Supervisor 1 confirmed that the decision to open the Sweep Investigation was not based on any information that the staff received from Claimant 3 nor from information learned from the Other Entity self-report.[17] And,

---

[16] Claimant 3 asserts that the Declarant's declaration states that the Sweep Investigation was opened in Redacted , whereas the Order Instituting Proceedings indicates that the investigation was opened in Redacted . The supplemental declaration clarifies that the Sweep Investigation was opened in Redacted and that the Formal Order of Investigation was obtained by the staff in Redacted . Regardless, Claimant 3's information played no role in the opening of the Sweep Investigation.

[17] Supervisor 1 confirms that, like the Declarant, he/she was aware that the Other Entity had sent a self-report to the Commission but was not aware of the specific details of the self-report. In addition, Supervisor 1 states that, at the time of the conception and opening of the Sweep Investigation, Supervisor 1, like the Declarant, was not aware of Claimant 3's TCR or of the existence of its underlying factual allegations and did not become aware that Claimant 3 had submitted his/her whistleblower complaint to the Commission until well after the opening of the Sweep Investigation.

Both the Declarant and Supervisor 1 note that they had limited discussions with staff from the Other Entity Investigation prior to the opening of the Sweep Investigation. Supervisor 1 notes that these discussions were general in nature and did not delve into the specific information that staff had received or learned from the Other Entity Investigation. Moreover, Supervisor 1 attests that during these discussions, the Other Entity Investigation staff did not tell Supervisor 1 about any Redacted Redacted . Supervisor 1 states that his/her discussions with the Other Entity Investigation staff prior to the opening of the Sweep Investigation only helped to inform his/her understanding of the Redacted at the Other Entity in relation to Redacted and that he/she did not learn about the existence of Redacted at companies other than the Other Entity from the Other Entity

as noted above, Supervisor 2 attested that Claimant 3 did not provide information to the Other Entity Investigation staff showing that Redacted Redacted.

Claimant 3 further asserts that he/she should receive credit for the information and assistance he/she provided that contributed to the Other Entity Action since that action led to the Commission investigating the Redacted, including the company that is the subject of the Covered Action. However, Supervisor 2, who supervised the Other Entity Investigation, stated that Claimant 3 did not provide information to the Other Entity Investigation staff showing Redacted Redacted. Further, the declarations from the staff who participated in the decision to open the Sweep Investigation – the Declarant and Supervisor 1 -- and that of Supervisor 2 state that the Other Entity Investigation staff did not share Claimant 3's information with the staff that opened the Sweep Investigation nor advise the staff that opened the Sweep Investigation about any Other Entity Redacted Redacted other than the Other Entity. Indeed, Supervisor 2 stated that he/she did not recall telling the staff who participated in the opening of the Sweep Investigation about the content of any Redacted Redacted that the Other Entity Investigation staff received, nor did he/she recall mentioning Claimant to them or the information Claimant 3 provided to the Other Entity Investigation staff.

This is not to denigrate Claimant 3's contribution to the success of the Other Entity Action, a contribution that we recognized with an order directing the payment of a whistleblower award to Claimant 3.[18] However, the issue here in assessing Claimant 3's eligibility to receive a whistleblower award is not the importance of Claimant 3's contribution to the Other Entity Investigation and the Other Entity Action but, rather, whether the information Claimant 3 submitted to the Commission caused the staff to open the Sweep Investigation or inquire concerning different conduct as part of a current examination or investigation or significantly contributed to the success of the Covered Action. We conclude that Claimant 3's information did not cause the staff to open the Sweep Investigation, inquire concerning different conduct as part of a current examination or investigation or significantly contribute to the Sweep Investigation or the success of the Covered Action.

We also reject Claimant 3's argument that he/she is entitled to an award for the Covered Action, since the Covered Action shares "the same nucleus of operative facts" with the Other Entity Action. While the Other Entity Action and the Covered Action concerned similar types of misconduct, the two actions involved entirely different actors and somewhat different time

---

Investigation staff. Supervisor 2 confirms that discussions he/she had with Supervisor 1 were general in nature and did not delve into the specific information that the Other Entity Investigation staff had received or learned from the Other Entity during the course of the Other Entity Investigation.

[18] *See supra* note 6.

periods.[19] Thus, we find that the Covered Action did not arise from the same nucleus of operative facts as the Other Entity Action.[20]

We further reject Claimant 3's assertion that he/she is eligible for an award because the Commission allegedly used the resolution of the Other Entity Action as a "playbook" for the Redacted Covered Action. To qualify for an award under Section 21F of the Exchange Act, a whistleblower must have "voluntarily provided original information to the Commission that led to the successful enforcement of the covered . . . action."[21] Rules 21F-4(c)(1) and (c)(2) specify that this "led to" requirement is satisfied if either "you gave the Commission original information that cause[d] the staff to . . . open an investigation . . . or to inquire concerning different conduct as part of a current examination or investigation" or "[y]ou gave the Commission original information about conduct that was already under examination or investigation by the Commission . . . and your submission significantly contributed to the success of the action."[22] The focus of the inquiry is on claimant's information, and Claimant 3's argument that the Other Entity Action served as a "playbook" for the Commission's Redacted *** Covered Action does not address whether the *information* provided by Claimant 3 led to the success of the Covered Action under Rules 21F-4(c)(1) and (c)(2). As discussed, the information Claimant 3 submitted to the Commission was not shared with the staff that opened the Sweep Investigation and was not helpful to the staff that opened and worked on the Covered Action. Thus, the Commission need not decide whether the Other Entity Action was a template for Redacted Covered Action since Claimant 3's information did not lead to the success of the Covered Action. Further, an interpretation that would grant an award for a template untethered to specific fact allegations would undermine the administrability of the whistleblower program by "introducing speculative and complex causal chains that would be difficult and impracticable in many instances for the Commission to investigate and evaluate."[23]

Similarly, while Claimant 3 does not specify what is meant by providing a template or "playbook" for the Covered Action, even if Claimant 3 can be broadly construed to be arguing

---

[19] While the Other Entity Action concerned misconduct that occurred from at least Redacted, the misconduct in the Covered Action occurred from at least Redacted.

[20] *See* Order Determining Whistleblower Award Claim, Exchange Act Rel. No. 98340 (Sept. 11, 2023) at 4 ("While the Associated Actions involved similar misconduct related to the Covered Action, the time periods of the misconduct in each case were different and they each involve different actors [and] [a]s a result, the Associated Actions do not arise from the same nucleus of operative facts and should not be aggregated together or with the Covered Action for purposes of making an award determination under Rule 21F-4(d)(1)"); Order Determining Whistleblower Award Claim, Exchange Act Rel. No. 96324 (Nov. 16, 2022) at 2 ("The record demonstrates that the Covered Action and the Second Action involved different and unrelated parties and transactions, which Claimant concedes. The Second Action also was brought more than two years after the Covered Action. That the two enforcement proceedings allege similar violations of law does not mean that they arose from the same nucleus of operative facts.").

[21] Exchange Act Section 21F(b)(1), 15 U.S.C. § 78u-6(b)(1).

[22] Claimant 3's eligibility for an award under Rule 21F-4(c)(3) is addressed separately below.

[23] *See* Release No. 34-91253 (Mar. 4, 2021).

that he/she should receive an award based on speculation that the Other Entity Action pointed to a general area of enforcement interest though untethered to any specific information, that argument fails for the additional reason that such a submission does not qualify as "original information" with respect to the Covered Action. Only "*original information*" that "led to the successful enforcement of the covered . . . action" can qualify a claimant for an award.[24] Original information consists of either "independent knowledge" or "independent analysis." Independent knowledge means "factual information in [claimant's] possession that is not derived from publicly available sources."[25] Independent analysis means claimant's "examination and evaluation of information that may be publicly available, but which reveals information that is not generally known or available to the public."[26] Speculation as to the potential impact of a claimant's submission regarding another action on general areas of enforcement interest untethered to any specific fact allegations from the award claimant regarding the covered action does not satisfy that threshold. Because such a submission would not qualify Claimant 3 for an award in any case, the Commission need not decide whether Claimant 3's submission amounts to a template or "playbook" as described in this paragraph or served as a template for the Covered Action.

Regarding Claimant 3's argument that he/she is eligible for a whistleblower award under Exchange Rule 21F-4(c)(3) [27] based on the information the Other Entity provided the Commission as a result of Claimant 3 having first reported internally to the Other Entity, Claimant 3 does not meet the requirements of this rule. Rule 21F-4(c)(3) provides that if:

* a whistleblower reports original information through an entity's internal whistleblower, legal or compliance procedures before or at the same time he or she reports it to the Commission;

* the entity provides the Commission with the whistleblower's information or with the results of an investigation initiated in response to the whistleblower's information;

* the information provided by the entity to the Commission "led to" successful enforcement under the criteria of Rule 21F-4(c)(1) or (c)(2) discussed above; and

* the whistleblower submits the same information to the Commission within 120 days of providing it to the entity,

then the whistleblower will receive full credit for the information provided by the entity as if the whistleblower had provided the information to the Commission.

---

[24] Exchange Act Section 21F(b)(1).

[25] Exchange Act Rule 21F-4(b)(2), 17 C.F.R. § 240.21F-4(b)(2).

[26] Exchange Act Rule 21F-4(b)(3), 17 C.F.R. § 240.21F-4(b)(3).

[27] Exchange Act Rule 21F-4(c)(3), 17 C.F.R. § 240.21F-4(c)(3).

While Claimant 3 satisfies the first two requirements of Rule 21F-4(c)(3) – he/she reported internally through the Other Entity's internal whistleblower, legal or compliance procedures before or at the same time he/she reported it to the Commission, and the Other Entity provided the Commission with the results of an investigation initiated in response to Claimant 3's information – Claimant 3 does not satisfy the third requirement of the rule – that the information the entity provided to the Commission satisfied the "led to" requirements of either paragraph (c)(1) (caused the Commission to commence an examination, open an investigation, reopen an investigation that the Commission had closed, or to inquire concerning different conduct as part of a current examination or investigation), or (c)(2) of the rule (significantly contributed to the success of the action). First, several staff declarations attested that no information from Claimant 3 was used in, or had any impact on, the charges brought by the Commission in the Covered Action. Second, Supervisor 2, who supervised the Other Entity Investigation, attested that Claimant 3 did not provide information to the Other Entity Investigation staff showing that Redacted Redacted . Finally, both the Declarant, who proposed the opening of the Sweep Investigation and Supervisor 1, who was the Declarant's supervisor, stated in their respective declarations that, while they were aware at the time the Sweep Investigation was opened that the Other Entity Investigation had been opened Redacted based on a self-report the Other Entity had sent the Commission, they were not aware of the specific details of the self-report. While Supervisor 1 had discussions with staff who worked on the Other Entity Investigation, including Supervisor 2, both supervisors attested that the discussions were "general in nature" and did not extend to Redacted or the specific information that the Other Entity Investigation staff had received or learned from the Other Entity. Rather, both the Declarant and Supervisor 1 attested that the Sweep Investigation was opened as a result of the Sweep Investigation staff's: (1) receipt, in response to its investigative subpoena to the Other Entity,[28] of information showing that the Redacted Redacted Redacted ; (2) discussions with other SEC attorneys (none of whom provided them with information from Claimant 3 or detailed information about the Other Entity's self-report); and (3) reading news coverage indicating that similar conduct had taken place at Redacted . Thus, Claimant 3's tip and the Other Entity's self-report did not cause the opening of the Sweep Investigation, nor, as multiple staff declarations attest, did it contribute to the Sweep Investigation itself or to the success of the Covered Action.[29]

We also reject Claimant 3's argument that he/she should receive an award because Claimant 3's internal reporting at the Other Entity caused news coverage of Redacted , which contributed to the staff's decision to open the Sweep Investigation. Exchange Act Rule

---

[28] This subpoena was not issued by the staff on the Other Entity Investigation. As previously noted, it was issued in a different investigation.

[29] Regarding the fourth requirement of Rule 21F-4(c)(3) – that the whistleblower submit the same information to the Commission within 120 days of providing it to the entity – Claimant 3 argues that the Commission should waive or grant an exemption for his/her arguable failure to have submitted the information within 120 days of providing it to the entity. We do not address this contention since the third requirement of Rule 21F-4(c)(3) was not met and, thus, the rule is inapplicable regardless of whether a waiver or exemption is granted.

21F-4(c) requires that information must be submitted to the Commission to qualify as information that led to the success of a covered action.

Finally, Claimant 3's argument regarding the alleged incompleteness of the record and his/her need to review additional materials is inapposite, and we deny Claimant 3's request for additional documents. Exchange Act Rule 21F-18(b)(2) permits an award claimant to request the staff declaration that was relied upon by OWB in issuing the Preliminary Summary Disposition and to receive a copy of this declaration provided the claimant signs and completes a confidentiality agreement in the form and manner acceptable to OWB.[30] Claimant 3 signed and completed the confidentiality agreement and received copies of the various staff and supervisor declarations. However, as we have previously pointed out, "the whistleblower rules do not authorize a claimant to go on a fishing expedition to . . . obtain copies of the SEC's entire investigative file."[31] Similarly, the rules do not permit a claimant to investigate, or cause the Commission to investigate, how the staff utilized the information it received from a claimant.[32] The evidence in the record demonstrates that Claimant 3 requested and then was properly sent the record materials that formed the basis for the Preliminary Summary Disposition.[33] Claimant 3 is not entitled to any extra-record materials.[34]

[30] The Rules state that the record upon which an award determination is made shall consist of sworn declarations provided by the relevant Commission staff, in addition to the publicly available materials related to the particular covered action, the claimant's tip, the claimant's award application, and any other materials timely submitted by the claimant in response to the Preliminary Determination or Preliminary Summary Disposition. *See* Exchange Act Rule 21F-12(a), 17 C.F.R. § 240.21F-12(a). There is no basis to disregard Rule 21F-12(a) and expand the record to include any of the additional documents requested by Claimant 3. *See* Exchange Act Rule 21F-12(b), 17 C.F.R. § 240.21F-12(b) ("These rules do not entitle claimants to obtain from the Commission any materials (including any pre-decisional or internal deliberative process materials that are prepared exclusively to assist the Commission in deciding the claim) other than those listed in paragraph (a) of this section [*i.e.*, Rule 21F 12(a)]."

[31] Order Determining Whistleblower Award Claim, Exchange Act Rel. No. 94647 (Apr. 8, 2022) at 5; Order Determining Whistleblower Award Claim, Exchange Act Rel. No. 88973 (May 29, 2020) at 5. *See also* Exchange Act Rule 21F-12(b), 17 C.F.R. § 240.21F-12(b) (noting that the whistleblower rules "do not entitle claimants to obtain from the Commission any materials (including any pre-decisional or internal deliberative process materials that are prepared exclusively to assist the Commission in deciding the claim) other than those listed in paragraph (a) of this section").

[32] Order Determining Whistleblower Award Claim, Exchange Act Rel. No. 94647 (Apr. 8, 2022) at 5.

[33] The record materials include redacted versions of several staff declarations (which were redacted to protect the confidentiality of the other claimants), Claimant 3's Form WB-APP, and Claimant 3's TCR. Because Claimant 3 had previously submitted the Form WB-APP and the TCR to the Commission, those documents were omitted from the record package that OWB sent to Claimant 3; however, the Form WB-APP and the TCR are still part of the record.

[34] Similarly, we also reject Claimant 1's arguments regarding the record he/she received with his/her Proposed Summary Disposition. As with Claimant 3, Claimant 1 received the sworn staff declaration that set forth the pertinent facts regarding OWB's recommendation to deny Claimant 1's application. Again, as with Claimant 3, Claimant 1 is not entitled under the whistleblower rules to any extra-record materials, such as the identities of the other award claimants.

## III. Conclusion

Accordingly, it is hereby ORDERED that the whistleblower award applications of Claimants 1, 2 and 3 in connection with the Covered Action be, and they hereby are, denied.

By the Commission.

Vanessa Ann Countryman

Vanessa A. Countryman
Secretary